**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.:   1:11-cv-7152 Hon. Judge Sara Ellis |
| GREGORY WEBB and, INFRAEGIS, INC., | ) ) ) | |
| Defendant. | ) | |

**INFRAEGIS INC.'S RESPONSE AND
OPPOSITION TO THE SEC'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Defendant, **InfrAegis Inc.** ("InfrAegis"), by and through its counsel, Stephen F. Hall, and respectfully submits its Response and Opposition to the SEC's Motion for Summary Judgment ("Motion"). In support thereof, InfrAegis states as follows:

**I. Introduction**

The United States Securities and Exchange Commission ("SEC") moves for summary judgment on the premise that co-defendant Gregory Webb should be collaterally estopped from re-litigating issues previously decided against him in connection with his criminal prosecution. The SEC's argument collapses like a house of cards though, when it attempts to explain how the prior findings against Webb could possibly be imputed against InfrAegis in connection with this civil proceeding, *i.e.*, why InfrAegis should be summarily, categorically, and forever barred from defending against claims that it never had a chance to litigate.

Indeed, the SEC's superficial analysis of Webb's conviction and how it purportedly "also establish[es] InfrAegis' liability for securities fraud" (Mot. Brf., p. 9) fails to cite even a single

decision within the Seventh Circuit whereby collateral estoppel principles have ever been applied to preclude a party from defending claims (whether civil or criminal) based on issues previously determined against an entirely separate party in an entirely separate criminal proceeding. This is because no such instance exists in the Seventh Circuit. To the contrary, because InfrAegis was afforded no opportunity to litigate the subject issues in connection with Webb's criminal prosecution, much less a "full and fair opportunity" commensurate with Seventh Circuit precedent, the controlling standard requires that the SEC's attempt to invoke estoppel against InfrAegis be rejected.

## II. Background

### a. Procedural History

The SEC initiated this lawsuit with the filing of its Complaint on October 11, 2011. Dkt. No. 1. Through its Complaint, the SEC alleged the following civil violations: Count I – violations by Webb and InfrAegis of §§ 5(a) and (c) of the Securities Act; Count II – violations by Webb and InfrAegis of § 17(a)(1) of the Securities Act; Count III – violations by Webb and InfrAegis of §§ 17(a)(2) and (a)(3) of the Securities Act; Count IV – violation by Webb of § 10(b) of the Exchange Act; County V – violations by Webb and InfrAegis of § 10(b) of the Exchange Act; and Count VI – control person liability for Webb based on § 20(a) of the Exchange Act. Dkt. No. 1. All counts of the Complaint purport to seek injunctive relief, as well as disgorgement of allegedly ill-gotten gains and civil penalties payable to the SEC pursuant to § 20(d) of the Securities Act and § 20(d) of the Exchange Act. *Id*.

On December 20, 2011, the defendants appeared by counsel and filed their Answer to the Complaint. Dkt. No. 11. In their Answer, the defendants generally availed themselves of protection under the Fifth Amendment to the Constitution. On the same date, the parties

appeared before Judge Joan H. Lefkow, who resolved to stay the case until February 23, 2012. Dkt. No. 12. The case was subsequently stayed until June 28, 2018. Dtk. No. 63. By that date, Defendant Webb's criminal case (*U.S. v. Webb*, 14-cr-103 (N.D. Ill.)) had concluded with a finding of guilt exclusively as against him, and an affirmation of that finding by the Court of Appeals for the Seventh Circuit. *See U.S. v. Webb*, 727 Fed. Appx. 192 (7th Cir. 2018).

When the aforementioned stay was lifted, undersigned counsel filed an appearance on behalf of InfrAegis (Dkt. No. 68) and filed an Amended Answer to the Complaint. Dkt. No. 75. The SEC then filed the instant Motion. Dkt. Nos. 76-78.

### b. InfrAegis Undisputedly had no Opportunity to Litigate the Subject Issues

InfrAegis had no involvement in Webb's criminal case. That is, the company was not represented in connection with Webb's criminal proceeding, and it had no way of otherwise participating in the proceeding. Although the SEC's brief lists some matters reflected in the parties' Joint Statement of Material Facts ("JS"), certain crucial others confirming the impropriety of the SEC's attempt to apply collateral estoppel and vicarious liability principles against InfrAegis have been omitted. Principal among the undisputed material facts left out of the SEC's Motion are as follows:

- No finding was made in the criminal case suggesting vicariously liability on the part of InfrAegis for Webb's actions;

- Webb was neither tried nor found guilty of or liable for any violations of the Securities Act or the Exchange Act (i.e., the civil claims now raised against InfrAegis);

- InfrAegis was neither tried nor found guilty of or liable for any violations of the Securities Act or the Exchange Act; and

- The only issue decided by the jury at Webb's trial was his personal guilt for mail and wire fraud.

JS, ¶¶ 32-35. Despite InfrAegis' lack of representation and inability to participate in Webb's criminal trial, the SEC now asks this Court to summarily bar InfrAegis from contesting any matters of liability or damages in this case. For the reasons stated below, this request must be denied.

## III. Argument

The SEC is requesting the Court to apply a novel rule of law as against InfrAegis, in order to produce a result never before reached in this Circuit. That is, the SEC seeks to combine principles of collateral estoppel and vicarious liability in the form of *respondeat superior* so as to bar InfrAegis from defending claims it had no chance to litigate in connection with Webb's criminal proceeding. Neither concept is successful against InfrAegis, whether considered independently or in combination. Indeed, no instance exists in the Seventh Circuit whereby such principles have ever been combined and applied offensively, against either a civil or criminal defendant, based on issues decided in a prior non-mutual criminal proceeding, i.e., the criminal prosecution of a different party.

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp v. Catrett*, 477 U.S. 317, 322 – 23 (1986). "To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and the affidavits that are part of the record." *Chicago Title Insurance Company v. Sinikovic*, 125 F.Supp.3d 769, 775 (N.D. Ill. 2015); Fed. R. Civ. P. 56 & advisory committee's notes. The moving party has the burden of providing proper documentary evidence to show the absence of genuine issues of material

4

fact. *Celotex*, 477 U.S. at 323 – 24. The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001).

In addressing a motion for summary judgment, "the court may consider any material that would be admissible or usable at trial." *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000), citing *Aguilera v. Cook County Police & Corrs. Merit Bd.*, 760 F.2d 844, 849 (7th Cir. 1985). A court may consider materials that are properly authenticated and otherwise admissible. *Id.*, citing 28 U.S.C. § 1746; Fed. R. Civ. P. 56(e). Conversely, and particularly noteworthy where the SEC touts as professed "evidence" the conclusory allegation of its own Complaint that InfrAegis (rather than Webb individually) "raised … funds from investors by falsely portraying InfrAegis as a successful company that had both high-level connections in the homeland security market and lucrative contracts for the sale of InfrAegis' products" (Mot. Brf., p. 2), the contents of indictments and pleadings comprise inadmissible hearsay and should not be considered in evaluating motions for summary judgment. See *In re Blech Securities Litig.*, 2003 WL 1610775 at *11 (S.D.N.Y. March 26, 2003) ("The statements contained in the amended complaint are inadmissible hearsay, excluded by Rules 801, 802, and 803 of the Federal Rules of Evidence. This document is not evidence of anything other than the existence of an accusation"); *Stevenson v. Hearst Consol. Publ'ns. Inc.*, 214 F.2d 902, 907 (2d. Cir. 1954); see also *In re WorldCom, Inc. Securities Litig.*, 2005 WL 375315, at *8-9 (S.D.N.Y. Feb. 17, 2005) (precluding introduction of criminal indictments in civil securities trial as inadmissible hearsay); *Ruffalo's Truck. Serv. V. Natl. Ben-Franklin Ins. Co.*, 243 F.2d 949, 953 (2d Dist. 1957).

Here, the SEC has not put forward independent evidence gathered through discovery, but rather relies on combined principles of collateral estoppel and *respondeat superior* to prove its claims. For the reasons stated below, neither argument is supported by the facts and

circumstances in this case. Similarly, the combination of the two, unsupported arguments does not allow the SEC to prevail in its claim for summary judgment.

### a. There has Been no Finding of Vicarious Liability on the Part of InfrAegis for the Actions of Gregory Webb, and neither can this Court make such a finding on the Facts Presently Available

The SEC's argument essentially boils down to two erroneous contentions: 1) vicarious liability can be determined as a matter of law; and 2) principles of collateral estoppel applying to Webb should then carry through and be imputed to InfrAegis. Taking the former issue first, vicarious liability in the form of *respondeat superior* does not and cannot apply here, where no undisputed facts exist supporting such a finding.

"Respondeat superior subjects a master to liability for the torts committed by his servants while acting within the scope of their employment. A servant is traditionally defined as one employed by another to perform services and whose physical conduct in performing the services is controlled, or subject to a right of control, by the other." William J. Seiter, *Rule 10b-5 and Vicarious Liability Based on Respondeat Superior*, 69 Calif. L. Rev. 1513, 1516 (1981), citing Restatement (Second) of Agency § 219 (1958); W. Prosser, The Law of Torts 460 (4th ed. 1971); *Alonso v. Weiss*, 98 F.Supp.3d 956, 971 (N.D. Ill. 2015) ("Under the doctrine of respondeat superior, an employer can be liable for the torts of his employee when those torts are committed within the scope of the employment…"). Thus, for the SEC to make even a colorable claim for vicarious liability, it must first produce genuine evidence that Webb's actions underlying his mail and wire fraud convictions were committed within the scope of his InfrAegis employment. To actually succeed on its instant Motion, the SEC would have to prove the absence of any material fact issue in this regard – a showing which the SEC simply has not and cannot make.

According to the Illinois Supreme Court, "[s]ummary judgment is generally inappropriate when scope of employment is at issue." *Pyne v. Wimer*, 543 N.E.2d 1304, 1308 (Ill.1989) (citations omitted). Indeed, here the contested question whether Webb was acting within the scope of an agency relationship in committing fraud is highly dubious, much less so clear as to be undisputed. See *Harrison v. Dean Witter Reynolds, Inc.*, 715 F.Supp. 1425, 1430 (N.D. Ill. 1989). When it comes to intentional wrongdoing, there is an especially high bar to meet in demonstrating that an action falls within the scope of an agency relationship.

In cases involving intentional wrongdoing, the scope of employment doctrine takes on an abstract quality, since such wrongdoing can never truly be deemed within the scope of an employee's employment. If it were, then the employer's liability would be direct, not vicarious. See Restatement (Second) of Agency, § 212 & Comment a; cf. *Pomer v. Deere & Co.*, 875 F.2d 1262, slip op. at 7 (7th Cir. 1989). In determining whether an employer is liable for the intentional wrongdoing of an employee, the analysis becomes one of degree: just how related must the wrongdoing be to the nature of the employee's work before the wrongdoing itself falls within the scope of the employment? *Harrison*, 715 F.Supp. at 1430.

Rather than citing any facts tending to establish that Webb's wrongdoing was carried out while acting as an agent or servant of InfrAegis, and *within the scope* of his employment, the SEC merely states as a legal conclusion that "Webb's fraud is imputed to InfrAegis because principals are liable for misrepresentations made by their agents… and corporations are liable for false statements of their employees … ." (Mot. Brf., p. 10). This conclusory assertion completely ignores the complex considerations which this Court must make in determining whether Mr. Webb was in fact acting within the scope of employment when he made misrepresentations to investors – a proposition which InfrAegis vehemently disputes. Contrary

7

to the SEC's professed belief, and as noted by Judge Kendall in connection with Webb's criminal trial, InfrAegis was not a business organized for the purpose of committing fraud (Dkt. No. 121, pp. 1512-13, *United States v. Webb*, 14 CR 103 (N.D. Ill.)), and it is an undisputed fact that "[t]here was no finding in the criminal case that InfrAegis was vicariously liable for the actions of Mr. Webb." JS, ¶ 32.

Here, the SEC has asked the Court to make a series of inferences regarding alleged vicarious liability based on conclusions and conjecture rather than any facts found in the record. Not only does the applicable standard of review require that all reasonable inferences be drawn in InfrAegis' favor as the nonmovant, but the law is likewise settled that the Court "is not required to draw every conceivable inference from the record" as the SEC requests. *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003). Because the SEC's request for summary judgement against InfrAegis on the vicarious liability theory is based solely on unsupported conclusions, and where InfrAegis contests that Webb acted within the scope of his employment in committing the subject acts, the instant Motion should be denied.

### b. Collateral Estoppel Principles do not Apply in the Instant Matter

To succeed on a motion for summary judgment based on collateral estoppel (i.e., "issue preclusion") principles, the movant must show that:

1) the issue sought to be precluded is identical to the one decided in the prior action; 2) the issue was actually litigated in the prior action; 3) the determination of the issue was essential to the final judgment in the prior action; and 4) the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the prior action.

*Universal Guar. Life Ins. Co. v. Coughlin*, 481 F.3d 458, 463 (7th Cir. 2007); *Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 (7th Cir. 1995).

8

The Court will note that, despite the SEC's attempt to expand the applicability of collateral estoppel principles, the SEC's argument why Webb's criminal conviction should be "imputed" to InfrAegis is but one, scant and superficial paragraph of the its Motion. The SEC itself explicitly recognizes that "the doctrine [of collateral estoppel] typically applies only against those who were parties to a previous judgment …." (Mot. Brf., p. 9). Although a criminal conviction may, under limited circumstances, be used offensively to preclude issues against <u>a criminal defendant</u> in a separate civil proceeding (see *S.E.C. v. Black*, 2008 U.S. Dist. LEXIS 75812 (N.D. Ill. 2008, as cited by the SEC), the critical distinction here is that no court in the Seventh Circuit has ever determined that issues decided during the criminal proceeding may later be applied offensively against <u>a different party defendant</u> in a separate proceeding under any circumstances. This is presumably because the very concept is diametrically opposed to requisite element number four of the collateral estoppel analysis above, i.e., that the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the prior action.

"Critical to the application of collateral estoppel is the guarantee that the party sought to be estopped had the opportunity and the incentive to litigate the issue aggressively." *Appley v. West*, 832 F.2d 1021, 1026 (7th Cir. 1987), quoting *Kunzelman v. Thompson*, 799 F.2d 1172, 1177 (7th Cir. 1986). Simply put, it was impossible for InfrAegis to intervene or otherwise participate meaningfully as a litigant in Webb's criminal prosecution.

As in every scenario where collateral estoppel principles are invoked, here the burden falls on the SEC to show that each of the foregoing applicable requirements is satisfied. *Havoco*, 58 F.3d at 307. "This includes 'establishing which issues were actually determined in [the SEC's] favor in the prior action.'" *Appley*, 832 F.2d at 1025, quoting *Gildorn Savings Association v. Commerce Savings Association*, 804 F.2d 390, 393 (7th Cir. 1986). Whereas the

SEC contends that collateral estoppel should preclude InfrAegis from litigating the instant action based on a jury's prior finding of criminal guilt against Webb, to the contrary it is undisputed that InfrAegis was not a named party in Webb's criminal trial, and that InfrAegis never had an opportunity to litigate any alleged wrongdoing. There was no finding by the jury at Webb's criminal trial as to the liability or responsibility of InfrAegis as to Webb's guilt. JS, ¶¶ 32-35. InfrAegis has had no opportunity to litigate the issue of its role in the alleged scheme to commit fraud or its liability under an agency theory. As such, precluding these issues from being litigated in the present matter on the basis of collateral estoppel would be wholly improper.

"If a court does not make specific findings, the party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Black*, 2008 U.S. Dist. LEXIS 75812 at *11-12, quoting *PaineWebber, Inc. v. Ras*, 767 F.Supp. 930, 932 (N.D. Ill. 1991). "The nonmoving party may oppose the motion by arguing that the moving party has not met all elements of collateral estoppel." *Havoco*, 58 F.3d at 307-08. "[I]f there is doubt … collateral estoppel will not be applied." *Black*, 2008 U.S. Dist. LEXIS 75812 at *12, quoting *PaineWebber*, 767 F.Supp. at 932. Here, where the SEC does not and cannot sincerely suggest that InfrAegis had any opportunity to participate in Webb's criminal prosecution (much less an opportunity "to litigate the issue[s] aggressively"), and where critical issues were not previously determined (such as any finding tending to establish vicarious liability on the part of InfrAegis), a substantial, logical gap exists precluding the application of collateral estoppel principles against InfrAegis based on Webb's mail and wire fraud convictions.

The SEC posits that "Webb's fraud is imputed to InfrAegis because principals are liable for misrepresentations made by their agents" (Mot. Brf., p. 10), citing *Sullivan v. Glenn*, 782 F.3d 378, 381 (7th Cir. 2015) as professed support. But the *Sullivan* panel did not adopt any

10

such bright line rule in its evaluation of the distinguishable facts at issue in that case. *Sullivan* involved the question whether misrepresentations made by a debtor's agent could be imputed to the debtor so as to deny the debtor's ability to discharge the debt in bankruptcy. *Id*. at 379. The court held that such a misrepresentation by an agent should not result in denial of the discharge. Specifically, the court held that "[p]roof that a debtor's agent obtains money by fraud does not justify the denial of a discharge to the debtor, unless it is accompanied by proof which demonstrates or justifies an inference that the debtor knew or should have known of the fraud." *Id*. The court went on to state that the victim of the fraud was in as good of a position as the debtor to detect the fraud. *Id*. The case has no application whatsoever in the instant matter.

Likewise, for the SEC's misleading proposition that "corporations are liable for false statements of their employees" (Mot. Brf., p. 10), the SEC claims to find support in *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 708 (7th Cir. 2008). Similar to *Sullivan* however, while the court in *Makor* did state that "[a] corporation is liable for statements by employees," the SEC conveniently neglects to address the paragraph immediately following and clarifying that statement in the decision. That is, the *Makor* panel went on to underscore that "deliberate wrongs by an employee are not imputed to his employer unless they are not only within the scope of his employment but in an attempted furtherance of the employer's goals." *Id*.

To reiterate, no prior factual determination has been made either that Webb's conduct fell within the scope of his employment or that it was undertaken in an attempted furtherance of InfrAegis' goals. These propositions were never considered let alone established during Webb's criminal trial, and they certainly have not been shown in connection with the instant matter. JS, ¶ 32 ("There was no finding in the criminal case that InfrAegis was vicariously liable for the actions of Mr. Webb."). Neither does the Motion present any evidence by which the SEC is able

to bridge the gaping maw between conclusory allegation and undisputed fact as to InfrAegis' purported vicarious liability. Lastly, InfrAegis was never afforded a chance to litigate these allegations, which it categorically denies. For all of these reasons, the SEC's attempt to preclude litigation of the vicarious liability issue despite its inability to establish the requisite elements of collateral estoppel should be rejected.

### c. The SEC is not Entitled to Summary Judgment of the Allegation that InfrAegis Violated Sections 5(a) and 5(c) of the Securities Act

The SEC argues that it is entitled to summary judgment as to Count I of its Complaint based on the undisputed fact that InfrAegis offered stock for sale and that "[n]either InfrAegis' securities nor its securities offering were registered with the SEC. JS, ¶¶ 4, 5. It bears underscoring as an initial matter with respect to Count I of the Complaint, that the SEC's attempt to hold InfrAegis summarily liable for the sale/offering of unregistered securities is wholly independent of (and indeed a far cry from) the SEC's conclusory allegations of "fraud." In other words, the failure to register is unequivocally not tantamount to fraud. It is a completely different animal calling for completely different remedies under the Securities Act, and the SEC does not suggest otherwise. Apart from this, moreover, InfrAegis' alleged liability for failure to register is anything but a foregone conclusion.

The securities which InfrAegis offered were exempt from registration with the SEC pursuant to the exemptions found in Regulation D. See 17 C.F.R. §§ 230.500 *et. seq.* Specifically, InfrAegis offered its securities for sale to accredited investors pursuant to the private placement memorandum drafted by its then-counsel. Those securities were exempt from registration pursuant to § 506 of Regulation D. Application of Regulation D to the securities offered by InfrAegis requires the resolution of material issues of fact. See *Johnston v. Bumba*, 746 F.Supp. 1263, 1273 (N.D. Ill. 1991) (issue of whether "an offering is public or private is a

12

question of fact which must be resolved in light of the particular circumstances,"). Beyond the issue of whether the offerings were public or private, the SEC has failed to establish that the investors were anything but accredited or that InfrAegis otherwise failed to avail itself of the exemption. InfrAegis maintains that it did in fact qualify for the exemption and that it is not liable for the violations alleged in Count I.

InfrAegis hired competent counsel charged with identifying and properly invoking an exemption to the registration requirement. Exhibit A, Declaration of Bob Abbott, ¶¶ 5, 7-9. InfrAegis subsequently became embroiled in a fee dispute resulting in the inability to obtain a host of its file materials. *Id.*, ¶ 6. In 2006, InfrAegis retained the firm of Much Shelist to create a Private Placement Memorandum ("PPM") which was compliant with securities regulations. Ex. A, ¶¶ 9-10; Ex. A-3, pp. 2-5. Attorneys at Much Shelist did in fact create the PPM, which is the same document that InfrAegis used to make its exempt offerings. The PPM included the requisite language notifying the offerees that the security was not registered, and required them to identify whether they were an accredited investor. Indeed, InfrAegis did everything it could to ensure that it complied with the requirements of Regulation D and other statutes and regulations. As such, there exists a genuine issue of material fact as to whether InfrAegis is liable for violations as detailed in Count I of the Complaint. This Court must, therefore, deny the SEC's claim for summary judgment as to Count I.

### d. The SEC is not Entitled to any Relief as Against InfrAegis where there has been no Showing of Liability on the Part of InfrAegis

As comprehensively addressed above, because no evidence has been presented establishing liability on the part of InfrAegis, neither is the SEC entitled to summary judgment as to any of its claims for relief against InfrAegis. Whereas the SEC contends that "the Court may appropriately impose injunctive relief after awarding summary judgment premised on collateral

estoppel" (Mot. Brf., p. 12), such relief conversely cannot be imposed where it would be improper to preclude InfrAegis from fully and fairly defending this case for failure of the requisite collateral estoppel analysis (including both the absence of any prior issues decided as against InfrAegis and its inability to litigate in connection with Webb's criminal prosecution). As a threshold matter, the SEC's concurrent request for the Court to impose civil penalties and order disgorgement as against InfrAegis should likewise be denied outright because it wrongly presumes an award of summary judgment as to InfrAegis' alleged liability based on collateral estoppel principles.

  Moreover, even if it were permissible to deem InfrAegis responsible for disgorgement as a general matter at this stage (which it unequivocally is not), InfrAegis nevertheless could not be barred from litigating the amount of said disgorgement. Whereas the SEC asserts that "the Court should order InfrAegis to disgorge the $6,112,202 it received from the defrauded investors in the five years preceding the filing of the SEC's Complaint" (Mtn. Brf., p. 13), citing to Paragraph 25 of the parties' Joint Statement, the referenced paragraph instead states merely that "During the period October 11, 2006 through October 11, 2011, investors paid InfrAegis $6,116,202 to purchase InfrAegis securities." (JS, ¶ 25). To the contrary, the parties have never agreed either that InfrAegis defrauded investors, or that the $6,116,202 figure reflects any sort of measure of alleged "ill-gotten gains." Simply showing that InfrAegis accepted investments does not beget a proper basis for disgorgement calculation, especially in the absence of any finding of wrongdoing on the part of InfrAegis rather than Webb in his individual capacity.

### IV. Conclusion

For all of the reasons addressed herein, InfrAegis respectfully requests that the SEC's motion be denied in its entirety.

Respectfully submitted this 19th day of November, 2018.

By:     /s/ Stephen F. Hall
    Stephen F. Hall

One of the Attorneys for InfrAegis, Inc.

Stephen F. Hall
**Law Office of Stephen F. Hall**
53 West Jackson Boulevard,
Suite 1424
Chicago, Illinois 60604
312.858.4400/ stephen@sfhall.com

### CERTIFICATE OF SERVICE

I, Stephen F. Hall, hereby certify that on November 19, 2018, I electronically filed the foregoing **Response and Opposition to the SEC's Motion for Summary Judgment** with the Clerk of the United States Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

    /s/ Stephen F. Hall
    Stephen F. Hall