UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |  |
| Plaintiff, | ) ) | No. 11 C 7152 |
| v. | ) ) | Judge Sara L. Ellis |
| GREGORY E. WEBB and INFRAEGIS, INC., | ) ) |  |
| Defendants. | ) |  |

## OPINION AND ORDER

The United States Securities and Exchange Commission ("SEC") filed this suit against Defendants Gregory E. Webb and InfrAegis, Inc. ("InfrAegis"), alleging that Webb and InfrAegis fraudulently raised funds from investors by falsely portraying InfrAegis' success. The SEC claims Webb and InfrAegis violated (1) Sections 5(a) and (c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77e(a), (c), by failing to register InfrAegis securities; (2) Sections 17(a)(1)-(3) of the Securities Act, 15 U.S.C. § 77q(a)(1)-(3), by fraudulently offering securities; and (3) Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, based on the same conduct.[1] The SEC seeks a permanent injunction enjoining InfrAegis from committing any further violations of these sections, as well as disgorgement and prejudgment interest.[2] The Court stayed the case in light of the criminal proceedings in *United States v. Webb*, No. 14 CR 103 (N.D. Ill.), a criminal case against Webb based on the same underlying facts in this case. After

---

[1] The SEC also sought to impose control person liability on Webb under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

[2] The SEC sought the same relief against Webb. The parties reached a settlement of the SEC's claims against Webb, and the Court entered the parties' agreed consent judgment in favor of the SEC and against Webb on December 11, 2018. *See* Doc. 89.

those proceedings ended with Webb's conviction and sentencing, the SEC filed the present summary judgment motion. The SEC argues that Webb's conviction precludes litigation of the securities fraud claims, with InfrAegis liable for those claims because Webb operated as its agent, applying principles of both issue preclusion and *respondeat superior*. The SEC also argues that InfrAegis has not carried its burden on the registration claim. Because the record does not demonstrate that InfrAegis was fully represented during Webb's trial and the SEC cannot use *respondeat superior* to circumvent this requirement, the Court denies the SEC's motion for summary judgment against InfrAegis on the securities fraud claims. It also cannot grant judgment for the SEC on the § 5 registration claim because a dispute of fact exists as to whether InfrAegis' securities qualified for an exemption from registration.

## BACKGROUND[3]

Webb founded InfrAegis in 2003, owned the majority of its stock, and served as its chairman and CEO. Between October 11, 2006, and October 11, 2011, Webb and InfrAegis raised $6,116,202 from investors across the United States through the sale of InfrAegis common stock. InfrAegis and Webb used the means and instruments of interstate commerce and the mail in connection with InfrAegis' security offerings. InfrAegis did not register its securities offerings with the SEC. InfrAegis worked with lawyers to prepare its securities offerings and represented to investors that the securities were not registered because they qualified for an exemption. InfrAegis never sold, or had contracts to sell, any of the products Webb promoted when offering securities to investors. InfrAegis never repaid its investors.

On February 27, 2014, a grand jury returned an indictment charging Webb with mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. The indictment charged that Webb and

---

[3] The facts in this section are derived from the Joint Statement of Undisputed Material Facts and the additional facts included in InfrAegis' response. All facts are taken in the light most favorable to InfrAegis, the non-movant.

InfrAegis obtained over $9,000,000 from investors by fraudulently making and causing to be made materially false representations about InfrAegis' solvency and financial condition, awarded and future contracts, and expected and actual returns on investment. It also alleged that Webb and InfrAegis developed and disseminated offering materials that Webb knew falsely represented InfrAegis as a financially successful company with connections in the homeland security market and lucrative contracts for the sale of its products. The indictment claimed Webb made similar misrepresentations during investor conference calls, including that the City of Chicago had agreed to install one of InfrAegis' products, iaMedium, a kiosk that could purportedly detect the presence of nuclear or biological weapons. But, the indictment continued, although such negotiations took place in 2007 and 2008, the City never entered into any contract with InfrAegis to install the system. Similarly, the indictment alleged that Webb and InfrAegis made false representations about InfrAegis having a contract with the Washington Metropolitan Area Transit Authority ("WMATA") to install iaMedium in the WMATA's Metro system, despite the WMATA's termination of negotiations in January 2010 upon determining that InfrAegis was not financially responsible.

Webb proceeded to trial, which lasted from June 27 to July 11, 2016. The court instructed the jury that, to find Webb guilty of wire fraud, the government had to prove beyond a reasonable doubt that: (1) Webb knowingly devised or participated in a scheme to defraud, as described in the indictment; (2) Webb did so with the intent to defraud; (3) the scheme to defraud involved a materially false or fraudulent pretense, representation, or promise; and (4) Webb caused interstate wire communications to take place for the purpose of carrying out the scheme or attempting to do so. The mail fraud instruction contained the same first three elements, with the fourth replaced by the use of U.S. mail or a private or commercial interstate carrier for the

3

purpose of carrying out the scheme or attempting to do so. The jury found Webb guilty of three counts of wire fraud and six counts of mail fraud.[4] The court then sentenced Webb to 108 months in prison and ordered him to pay $9,359,384.57 in restitution. The Seventh Circuit Court of Appeals affirmed Webb's conviction and sentence. The criminal case against Webb did not include a finding that InfrAegis was vicariously liable for Webb's actions, and neither Webb nor InfrAegis were tried or found guilty of any violations of the Securities Act or the Exchange Act.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

---

[4] Although the indictment included two additional counts of mail fraud, the government dismissed these counts before the case went to the jury.

# ANALYSIS

I.  **Securities Fraud Claims**

The SEC asks the Court to enter judgment in its favor on the securities fraud claims against InfrAegis based on collateral estoppel, also known as issue preclusion, and *respondeat superior*. Specifically, the SEC seeks to preclude InfrAegis from contesting its liability on the SEC's securities fraud claims in light of Webb's convictions for mail and wire fraud based on the same conduct at issue in this case and Webb's role as InfrAegis' chairman, CEO, and majority owner.

For issue preclusion to apply, the SEC must establish the following elements: "(1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action."[5] *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). Under issue preclusion, an "outstanding criminal judgment or disciplinary sanction, as long as it stands, blocks any inconsistent civil judgment." *Haywood v. Hathaway*, 842 F.3d 1026, 1029 (7th Cir. 2016); *see also United States v. Suarez*, 664 F.3d 655, 663 (7th Cir. 2011) (stating that a party may not "re-litigate issues decided in his criminal case"); *Doe v. Cotterman*, No. 17 C 58, 2018 WL 1235014, at *8 (N.D. Ill. Mar. 9, 2018) ("[A] prior criminal conviction may be used offensively to preclude relitigation of issues in a civil case in which the criminal defendant is a party."). But "[s]uch estoppel extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution," which, for criminal convictions based on a jury verdict of guilty, means those issues "essential to the verdict." *Emich Motors*

---

[5] The Court looks to federal common law to determine the preclusive effect of Webb's federal convictions. *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008).

*Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 569, 71 S. Ct. 408, 95 L. Ed. 2d 534 (1951) (quoting *Frank v. Mangum*, 237 U.S. 309, 334, 35 S. Ct. 582, 59 L. Ed. 969 (1915)).

The SEC brought claims against InfrAegis and Webb under § 17(a) of the Securities Act, § 10(b) of the Exchange Act, and SEC Rule 10b-5. The elements are essentially the same, with the main distinction that "§ 10(b) and Rule 10b-5 apply to acts committed in connection with a *purchase or sale of* securities while § 17(a) applies to acts committed in connection with an *offer or sale* of securities." *S.E.C. v. Maio*, 51 F.3d 623, 631 (7th Cir. 1995). To establish a violation under § 17(a)(1) of the Securities Act and § 10(b) of the Exchange Act and Rule 10b-5, the SEC must establish that the defendant "(1) made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities." *McConville v. S.E.C.*, 465 F.3d 780, 786 (7th Cir. 2006); *Maio*, 51 F.3d at 631. The elements of a claim under § 17(a)(2) and (3) are the same, except that the SEC need only establish the defendant's negligence, as opposed to demonstrating scienter. *Aaron v. S.E.C.*, 446 U.S. 680, 701–02, 100 S. Ct. 1945, 64 L. Ed. 2d 611 (1980); *S.E.C. v. Holschuh*, 694 F.2d 130, 143 (7th Cir. 1982).

Webb's mail and wire fraud convictions all required the jury to find that Webb made a materially false statement or omission in connection with the offering or sale of securities, and that Webb did so with the intent to defraud. *See United States v. Webb*, 727 F. App'x 192, 196 (7th Cir. 2018). Therefore, Webb's criminal conviction establishes all the elements necessary to support his civil liability. *See S.E.C. v. Stein*, 906 F.3d 823, 829–30 (9th Cir. 2018) (finding a criminal securities fraud conviction precluded the defendant from challenging allegations in civil proceeding); *S.E.C. v. Durham*, No. 1:11-cv-00370-JMS-TAB, 2019 WL 935385, at *5 (S.D. Ind. Feb. 26, 2019) (concluding that criminal conviction for securities fraud supported application of issue preclusion to § 10(b), Rule 10b-5, and § 17(a) claims); *S.E.C. v. Milligan*,

6

No. CV-99-7357 (NG) (VVP), 2007 WL 9724904, at *3 (E.D.N.Y. June 5, 2007) (finding wire fraud conviction based on same factual allegations as civil securities fraud claims sufficient to apply issue preclusion to the securities fraud claims), *report & recommendation adopted*, 2007 WL 9724905 (E.D.N.Y. Oct. 2, 2007). But the SEC seeks to extend the application of issue preclusion to InfrAegis as well, claiming that sufficient privity exists between Webb and InfrAegis to do so. InfrAegis responds that the SEC cannot establish the fourth element required to apply issue preclusion, that it had a full and fair opportunity to litigate the issues in Webb's criminal case, because it did not have representation in Webb's criminal trial. The SEC claims that Webb did, however, meaning InfrAegis cannot avoid liability for Webb's actions because privity exists between the two parties.

The Court concludes that the SEC advocates for too broad of an application of privity. In *Taylor*, the Supreme Court set forth exceptions to the rule against nonparty preclusion. *Taylor*, 553 U.S. at 893–95; *Dexia Credit Local v. Rogan*, 629 F.3d 612, 629 (7th Cir. 2010) (noting that several exceptions exist to the "general rule that a person who was not a party to a suit has not had a full and fair opportunity to litigate issues in that suit"). "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned, and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. at 900 (citation omitted)). *Taylor* also outlined specific exceptions, including the existence of certain pre-existing substantive legal relationships, which courts have interpreted as grounded in property law. *See id.* at 894 (noting certain qualifying relationships that bind a non-party, such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor," and that the exceptions "originated 'as much from the needs of

property law as from the values of preclusion by judgment'" (citation omitted)); *In re Refco Inc. Secs. Litig.*, No. 07-md-1902 (JSR), 2013 WL 12191844, at *10–11 (S.D.N.Y. Mar. 25, 2013) (confining *Taylor*'s exception for substantive legal relationships to "property-based relationships," which did not include a partner-partnership relationship). A principal-agent or fiduciary relationship at the time the alleged acts occurred does not fall into one of these recognized property-based relationships. *See In re Refco*, 2013 WL 12191844, at *10–11. *But see Princeton Strategic Inv. Fund, LLC v. United States*, No. C 04-04310 JW, 2011 WL 6176221, at *3–5 (N.D. Cal. Dec. 7, 2011) (concluding that fiduciary relationship and partner-partnership relationship are "the type[s] of pre-existing substantive legal relationship[s] giving rise to non-party preclusion"). That is all that the SEC suggests existed here; it does not claim that Webb adequately represented InfrAegis' interests during the criminal trial or even understood himself to be acting in a representative capacity. *Cf. In re Refco*, 2013 WL 12191844, at *10 (concluding that individual defendant did not act in a representative capacity in his criminal trial and that the court did not protect the interests of the partnership defendant during that trial). Nor does the record suggest that InfrAegis controlled Webb's defense, *see Taylor*, 553 U.S. at 895 (noting that a nonparty may be bound by a judgment where it assumed control over the prior case), or that Webb remained an agent or fiduciary of InfrAegis at the time of his trial, *see Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 184–88 (2d Cir. 2003) (noting the possibility of applying collateral estoppel to company in privity with convicted employee if parties were in privity at the time of the employee's trial but declining to do so where company had severed ties with its employee before trial). Therefore, the evidence before the Court does

8

not establish that InfrAegis had adequate representation at Webb's trial to warrant precluding it from contesting liability based on Webb's criminal conviction.

As an alternative, the SEC appears to contend that InfrAegis is liable based on the combination of issue preclusion and *respondeat superior*. The parties do not dispute that *respondeat superior* liability applies to securities fraud claims, attaching where the employee acted in the scope of his employment and in furtherance of the corporation's goals. *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 708 (7th Cir. 2008). The SEC relies on *New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86–87 (2d Cir. 2000), to argue that the Court should combine the principles of issue preclusion and *respondeat superior* in this case. In *Julius Nasso*, the Second Circuit affirmed the application of issue preclusion to bind the corporate defendants to issues established in the corporate officer's criminal case based on privity. *Id.* at 87. But *Julius Nasso* did not discuss the basis for finding privity, and it came before the Supreme Court's adoption of a more limited approach to the preclusion of non-parties in *Taylor*. Moreover, the Second Circuit did not discuss using *respondeat superior* in combination with collateral estoppel to hold a corporation liable where it did not have a full and fair opportunity to litigate in the prior proceeding, rendering that case's analysis inapplicable to the present issue.

Instead, having considered the proposed interaction of issue preclusion and *respondeat superior*, the Court finds that the SEC cannot use *respondeat superior* to circumvent the fourth requirement of issue preclusion, that InfrAegis have had a full and fair opportunity to litigate the issues. Indeed, "the question of substantive liability for actions must be separated from the question whether a nonparty is bound by prior litigation concerning those actions." *In re Refco*, 2013 WL 12191844, at *13, 15 n.21 ("The fact that Mayer Brown is substantively liable for the acts of its partners does not mean that a prior *determination* of the partner's actions can preclude

9

Mayer Brown's right to contest those factual determinations."); *see also Stichting*, 327 F.3d at 186–87 ("[W]e must be careful not to conflate the doctrines of collateral estoppel and respondeat superior."). To the extent the SEC establishes that Webb acted within the scope of his employment at the time he committed the alleged securities fraud violations, InfrAegis would be substantively liable for his conduct, but this substantive liability does not "automatically saddle[ ] [InfrAegis] with [Webb's] defense at his trial." *In re Refco*, 2013 WL 12191844, at *14 (noting further that "in fact there is a strong presumption under *Taylor* that those issues can be litigated by the nonparty in a subsequent case"). Because the SEC does not provide any substantive argument as to InfrAegis' liability, relying instead only on preclusion and *respondeat superior*, the Court cannot grant summary judgment for the SEC on its securities fraud claims against InfrAegis.

## II.      Section 5 Registration Claim

Separately, the SEC seeks summary judgment on its claim that InfrAegis offered or sold securities without filing a registration statement in violation of § 5(a) and (c) of the Securities Act. To establish a *prima facie* violation of § 5, the SEC must show that "(1) each defendant directly or indirectly sold or offered for sale a security; (2) no registration statement has been filed as to the security; and (3) the offer or sale was made through the use of interstate facilities or the mails." *S.E.C. v. Montana*, 464 F. Supp. 2d 772, 782 (S.D. Ind. 2006). Once the SEC makes this showing, InfrAegis has the burden to establish that the securities are exempt from the registration requirement. *S.E.C. v. Randy*, 38 F. Supp. 2d 657, 667 (N.D. Ill. 1999).

Here, the SEC has established its *prima facie* case. The parties agree that InfrAegis offered and sold securities for which InfrAegis did not file a registration statement, and that InfrAegis used the mail and other interstate facilities to offer and sell these securities. InfrAegis

maintains that it did not need to register the securities based on an exemption provided by Regulation D, 17 C.F.R. § 230.500 *et seq.* Rule 506 of Regulation D provides two scenarios for claiming an exemption: (1) the offering involves no more than thirty-five non-accredited investors and those purchasers have "such knowledge and experience in financial and business matters that [they are] capable of evaluating the merits and risks of the prospective investment," 17 C.F.R. §§ 230.501(e), 230.506(b); or (2) the purchasers of securities are all accredited investors, and the issuer has taken "reasonable steps" to ensure this is the case, 17 C.F.R. § 230.506(c). Rule 506 provides certain actions that amount to reasonable steps, but it specifically indicates that these are "non-exclusive and non-mandatory methods" of verification. *Id.* An accredited investor includes persons whom the issuer "reasonably believes" falls within the listed categories. 17 C.F.R. § 230.501(a).

InfrAegis appears to rely on the second scenario, that it offered and sold the securities only to accredited investors. InfrAegis presents evidence that its subscription agreements indicated that the securities would not be registered under the Securities Act and were sold in reliance on exemptions to registration. The subscription agreement also lists the different manners in which the person purchasing InfrAegis could qualify as an accredited investor, as defined in 17 C.F.R. § 230.501(a).[6] Although not as detailed as it could be, a reasonable juror could find this evidence demonstrates that InfrAegis took steps to ensure that the securities

---

[6] The Court recognizes that in *Premier Capital Management, LLC v. Cohen*, the court found the defendants had not supplied sufficient evidence to carry their burden of demonstrating an exemption, despite the defendants' reliance on the information statement, which provided that the securities were being sold pursuant to Regulation D. No. 02 C 5368, 2008 WL 4378300, at *6 (N.D. Ill. Mar. 24, 2008). But in that case, the defendants were the moving parties, seeking summary judgment on their Regulation D affirmative defense, and the court noted that a jury could reject the defendants' conclusory statements in light of other evidence. *Id.* Here, as the non-moving party, InfrAegis need only show an issue of fact remains as to whether an exemption applies. *S.E.C. v. Levin*, No. 1:12-cv-21917-UU, 2014 WL 11878357, at *10 (S.D. Fla. Oct. 6, 2014) (noting that at summary judgment, the SEC must demonstrate that no evidence supports the defendant's invocation of an exemption to registration).

11

purchasers qualified as accredited investors, with InfrAegis relying on the investors to verify their status.[7] Indeed, the Seventh Circuit has found that a purchaser's acquiescence to the sale without registration suggests the private nature of the offering. *See Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1321 (7th Cir. 1988) ("[T]he plaintiffs' acquiescence in the sale without registration means that we must assume that they met the requirements of a § 4(2) or Rule 506 sale[.]"); *Springfield Oil Drilling Corp. v. Weiss*, No. 02 C 249, 2003 WL 22025006, at *8 (N.D. Ill. Aug. 28, 2003) (finding the plaintiff's signature on receipt of private placement memorandum affirming that securities were not registered with SEC indicated its acquiescence to the sale without registration). The SEC points out that the completed information statements InfrAegis has submitted do not include indications specifying the manner in which each purchaser qualified as an accredited investor and nothing suggests that InfrAegis took the steps outlined in Rule 506 to verify their status. But these arguments go to the weight of the evidence concerning the reasonable steps that InfrAegis took to ensure it met Regulation D's exemption and do not conclusively rebut InfrAegis' evidence. Indeed, Rule 506 does not purport to set forth the exclusive actions that amount to reasonable steps of verification. *See* 17 C.F.R. § 230.506(c). Because a question of fact exists as to whether Regulation D's exemption from registration applied to InfrAegis' offering and sale of securities, the SEC's § 5 claim must proceed to trial.

---

[7] InfrAegis also may be attempting to set forth an advice of counsel defense. Section 5 provides for strict liability, however, meaning that "good faith reliance on counsel" does not preclude liability. *S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1256 n.6 (9th Cir. 2013).

## CONCLUSION

For the foregoing reasons, the Court denies the SEC's motion for summary judgment [76] as it relates to InfrAegis. The Court also denies the SEC's motion as it relates to Webb as moot.

Dated: April 2, 2019

SARA L. ELLIS
United States District Judge